**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| Anibal G.A.P., | Civ. No. 26-1879 (JWB/DTS) |
| Petitioner, | |
| v. | |
| Pamela Bondi, *Attorney General, United States Department of Justice*; Kristi Noem, *Secretary, U.S. Department of Homeland Security*; Todd M. Lyons, *Acting Director of Immigration and Customs Enforcement*; and David Easterwood, *Field Office Director, St. Paul Field Office, U.S. Immigration and Customs Enforcement*, | **ORDER ON PETITION FOR WRIT OF HABEAS CORPUS** |
| Respondents. | |

---

Frances Ivy Mahoney-Mosedale, Esq., Gustafson Gluek PLLC, counsel for Petitioner.

David W. Fuller, Esq., and Jesus Cruz Rodriguez, Esq., United States Attorney's Office, counsel for Respondents.

---

This case asks whether Respondents may detain a noncitizen under 8 U.S.C. § 1225(b)(2) years after releasing him from custody under 8 U.S.C. § 1226 and placing him in removal proceedings under 8 U.S.C. § 1229. The answer is no. Because Respondents previously exercised authority to release Petitioner Anibal G.A.P. under § 1226, that statute—not § 1225—governs detention while removal proceedings remain pending.

In response to Petitioner's habeas filing, Respondents filed a motion to dismiss or

transfer this matter to the Southern District of Texas (Doc. No. 6), as well as a motion to reconsider and stay this Court's order requiring that Petitioner be returned to Minnesota (Doc. No. 10). Respondents then submitted a status update indicating that Petitioner had been returned to Minnesota (Doc. No. 11), rendering both requests moot. Accordingly, this Order considers the position on the merits of Petitioner's habeas claims that Respondents presented in their motion papers. (*See* Doc. No. 7 at 6–9.)

Respondents' position on the merits has been often rejected in this District. *See, e.g.*, *Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1142–48, 1150–52 (D. Minn. 2025); *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 968–970 (D. Minn. 2025); *Mayamu K. v. Bondi*, Civ. No. 25-3035 (JWB/LIB), 2025 WL 3641819, at *7–8 (D. Minn. Oct. 20, 2025). Therefore, the Petition is granted to the extent that it requests release.

## BACKGROUND

Petitioner is a citizen of Guatemala. (Doc. No. 1, Petition ¶¶ 2, 31; Doc. No. 7-3 at 2.) He alleges that he entered the United States in 2011 and was then apprehended and released on his own recognizance. (Petition ¶¶ 2, 11, 31.) He now lives in St. Paul, Minnesota, and has a pending application for asylum. (*Id.* ¶¶ 2, 31–33.) He alleges that he has complied with all orders relating to his immigration proceedings. (*Id.* ¶ 2.)

On October 16, 2015, Respondents issued Petitioner a Notice to Appear charging inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i) for being present in the United States without being admitted or paroled. (Doc. No. 7-3 at 2.) The Notice placed Petitioner in removal proceedings pursuant to 8 U.S.C. § 1229a, which governs full removal proceedings before an Immigration Judge.

Petitioner's detention history shows he was detained at the Bishop Henry Whipple building on October 16, 2015, transferred to the Freeborn County Jail that same day, and then "Released - Bonded Out" on October 23, 2025. (Doc. No. 7-1.)

At a hearing on July 17, 2018, Petitioner conceded he was removable but applied for asylum and other relief from removal. (Doc. No. 7-3 at 2.) Petitioner's detention history shows he was again detained at the Whipple building on December 6, 2018, transferred to the Sherburne County Jail that same day, and then "Released – Bonded Out" on December 26, 2018. (Doc. No. 7-1.)

On August 13, 2025, an Immigration Judge denied Petitioner's asylum application and other requests for relief. (Doc. No. 7-3 at 18.) Petitioner timely appealed the rulings. (Doc. No. 7-2.) The record contains no evidence showing the appeal has been decided.

Petitioner alleges that masked agents arrested him without a warrant on January 20, 2026, while he was at work in Coon Rapids, Minnesota. (*Id.* ¶¶ 4, 15, 26, 34.) After initially being detained in Minnesota, the next day he was transferred to detention facilities in Texas. (*Id.* ¶¶ 1, 5, 14–15, 23; Doc. No. 7-1.) On March 20, 2026, Petitioner was flown back to Minnesota and detained at the Whipple building. (Doc. No. 11.)

## DISCUSSION

### I.      Legal Standard

A writ of habeas corpus may issue where a petitioner is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). The petitioner bears the burden of establishing, by a preponderance of the evidence, that the challenged detention lacks a lawful statutory basis. *See Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn.

3

2025) (collecting cases).

Immigration detention, like all civil detention, must rest on an express congressional grant of authority and must bear a reasonable relation to its statutory purpose. *Zadvydas v. Davis*, 533 U.S. 678, 687, 690 (2001) (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). Section 2241 confers jurisdiction to determine whether the Executive Branch has statutory authority to detain an individual, including in the immigration context. *See id.* at 687–88.

## II.   Analysis

Petitioner challenges only the lawfulness of his detention under federal law. He does not contest any removal order, the conduct of removal proceedings, or the execution of removal. Therefore, jurisdiction lies under 28 U.S.C. § 2241 to review the legal basis for custody. *See, e.g.*, *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154–55 (D. Minn. 2025). Because the Petition is not directed at removal, statutory channeling provisions do not apply either. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018).

The Immigration and Nationality Act ("INA") distinguishes between inspection, removal proceedings, and detention authority. "Inspection" is the process by which immigration officers determine whether a noncitizen seeking entry at the border or a port of entry may be admitted to the United States. *See* 8 U.S.C. § 1225(a). Section 1225 governs that process and generally requires detention in the case of a noncitizen "seeking admission." *Id.*; *see also Maldonado*, 795 F. Supp. 3d at 1149, 1152.

Section 1226, by contrast, governs detention of noncitizens already present in the United States. *Jennings*, 138 S. Ct. at 846. Detention under § 1226(a) is not mandatory

4

and permits release on bond or recognizance. *Maldonado*, 795 F. Supp. 3d at 1149–50.

Respondents assert that Petitioner is subject to § 1225(b)(2), which mandates detention of certain "applicants for admission" pending removal proceedings. The vast majority of district courts considering that assertion, including this Court, have determined that the text, structure, and function of the INA's detention provisions all indicate that § 1225 does not apply to noncitizens released to the interior of the country like Petitioner. *See Eliseo A.A. v. Olson*, Civ. No. 25-3381 (JWB/DJF), 2025 WL 2886729 (D. Minn. Oct. 8, 2025); *Mayamu K. v. Bondi*, Civ. No. 25-3035 (JWB/LIB), 2025 WL 3641819 (D. Minn. Oct. 20, 2025); *Khalid B.Q. v. Noem*, Civ. No. 25-4584 (JWB/DJF), Doc. No. 10 (D. Minn. Dec. 18, 2025); *Xuseen A. v. Bondi*, Civ. No. 25-4514 (JWB/DJF), Doc. No. 16 (D. Minn. Dec. 19, 2025).

*Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), does not alter the result either. Respondents have previously cited to it as if it reflects an independent adjudicatory resolution of statutory ambiguity. It does not. The Board of Immigration Appeals ("BIA") is a component of the Department of Justice ("DOJ") and operates under the Attorney General's supervisory authority. Its precedents are subject to review, revision, and overruling by the Attorney General, who sets binding interpretations of the INA for the Executive Branch. *Yajure Hurtado* thus reflects the DOJ's adopted litigation position concerning the scope of § 1225(b)(2), not an interpretation generated independently of that position. *See* Memorandum from Rodney S. Scott, U.S. Customs & Border Protection, Detention of Applicants for Admission (July 10, 2025) (memo from DHS requiring that all "applicants for admission" be detained under § 1225(b)(2) during

5

removal proceedings).

And even if *Yajure Hurtado* were such an independent interpretation, it would run headlong into the statute's text and structure for the reasons already explained. Where an agency's reading conflicts with the statute Congress enacted, it does not control. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024) (explaining that only long-standing and consistent agency interpretations merit weight); *see also Belsai D.S. v. Bondi*, Civ. No. 25-3682 (KMM/EMB), 2025 WL 2802947, at *7 n.5 (D. Minn. Oct. 1, 2025).

In habeas review, the question is not whether the Executive Branch has spoken with one voice—whether through the DOJ or BIA—but whether the detention authority it asserts is grounded in statute. That determination remains for the Article III courts. *See Zadvydas*, 533 U.S. at 688.

The analysis here is straightforward. Petitioner alleges that he was released from custody when he first arrived to the United States around 15 years ago. Since then, Respondents placed him in removal proceedings under § 1229a and released him from custody under § 1226, allowing him to remain in the community for years. Records indicate that Petitioner was detained and "Released - Bonded Out" from custody in 2015 and 2018. Nothing in the record suggests Respondents have since revoked release based on flight risk, danger, changed circumstances, or any other reason.

Section 1225(b)(2) provides no authority to revisit those custody determinations later. The Supreme Court has consistently treated §§ 1225 and 1226 as addressing different populations at different procedural moments, not as interchangeable sources of

6

detention authority. *Jennings*, 138 S. Ct. at 836–38. Nothing in § 1225 authorizes Respondents to revive mandatory detention just by recharacterizing a previously released noncitizen as an applicant for admission. *See, e.g.*, *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 969–70 (D. Minn. 2025). The statute contains no mechanism for that switch. Allowing Respondents to toggle between detention regimes in this way would collapse the statutory structure Congress enacted and render § 1226 largely superfluous.

Respondents also argue that Petitioner is nonetheless "seeking admission" because he has a pending asylum application. (Doc. No. 7 at 8.) As this Court and others have observed, this argument "blur[s] two distinct legal concepts" by equating seeking asylum, which concerns status, with "seeking admission," which concerns legal entry. *Junior O.P.V. v. Bondi*, Civ. No. 26-890 (JWB/JFD), Doc. No. 9 at 5 (D. Minn. Feb. 3, 2026) (noting that an asylum application would not make petitioner a noncitizen "seeking admission" under § 1225); *see also Gabriel J. v. Bondi*, Civ. No. 26-865 (SRN/LIB), 2026 WL 295192, at *3 (D. Minn. Feb. 4, 2026); *Yao v. Almodovar*, Civ. No. 25-9982 (PAE), 2025 WL 3653433, at *9 (S.D.N.Y. Dec. 17, 2025). A pending application for asylum does not mean Petitioner is perpetually "seeking admission" within the meaning of § 1225(b)(2)(A).

On this record, Petitioner's continued detention rests on a statute and an interpretation that do not apply and is unlawful. *See Khalid B.Q.*, Civ. No. 25-4584, Doc. No. 10 at 6; *Xuseen A.*, Civ. No. 25-4514, Doc. No. 16 at 7. Thus, he is entitled to a writ of habeas corpus that grants his immediate release subject to any previously imposed conditions. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) (describing release as the

7

"typical remedy" for "unlawful executive detention").

Because Petitioner has shown Respondents have not invoked a provision of the INA that authorizes his continued detention, the Petition for Writ of Habeas Corpus is granted, and Petitioner's other habeas claims are not reached.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in this case, **IT IS HEREBY ORDERED** that:

1.      Petitioner Anibal G.A.P.'s Petition for Writ of Habeas Corpus (Doc. No. 1) is **GRANTED**.

2.      **Release.** Respondents shall immediately release Petitioner from custody. He must be released in Minnesota, subject only to any previously imposed conditions of release. At the time of Petitioner's release, Respondents shall return to Petitioner all personal property in Respondents' custody or control, including but not limited to, passports, identity papers or licenses, immigration records, prescribed medications, and treatment-related equipment. Release may not be delayed for any reason related to the retrieval, processing, or return of such property. Any delay or failure to effectuate release in accordance with this paragraph constitutes noncompliance with this Order.

If Petitioner is currently held outside Minnesota, Respondents shall immediately initiate Petitioner's return to Minnesota for the sole purpose of effectuating release. Respondents shall not delay initiating Petitioner's return based on administrative convenience, transportation availability, or detention-capacity considerations.

Upon Petitioner's arrival in Minnesota, Respondents shall effectuate release

forthwith. If, at the time release would otherwise occur, weather conditions would expose Petitioner to extreme cold or other reasonably dangerous conditions, Respondents may delay physical release only for the brief period necessary to effectuate release in a safe manner. Respondents shall employ the earliest reasonably available safe means of release and may not delay release where a safe option is available. Any such delay must be strictly limited and must not be used to justify continued custody, supervision, or discretionary release authority.

3.      **Notice.** By 5:20 p.m. on March 22, 2026, Respondents shall file an update on the status of Petitioner's release. In the update, Respondents must confirm the time, date, and location of the release or anticipated return and release. If Petitioner has been removed from Minnesota, Respondents must file a confirmation of the time, date, and location of release promptly upon Petitioner's arrival in Minnesota.

4.      Respondents may not administratively recharacterize the release granted by this Order as grounds to impose conditions or re-impose existing conditions in conjunction with release (including release on recognizance or similar instruments), without prior notice to and authorization from the Court, or absent a new and independently lawful custody decision properly executed under the law. For the avoidance of doubt, Respondents' compliance with this Order requires Petitioner's immediate release in Minnesota without any newly issued instrument that either imposes new conditions of supervision or restraint or restates previously imposed conditions.

5.      Respondents may not re-detain Petitioner under a statutory theory this Court has rejected in this proceeding absent materially changed circumstances.

9

6.      Petitioner's other claims are not reached.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: March 20, 2026                          _s/ Jerry W. Blackwell_
Time: 5:20 p.m.                               JERRY W. BLACKWELL
                                             United States District Judge